(29 Misc. Rep. 158.)

PEOPLE ex rel. TURNER v. YORK et al. PEOPLE ex rel. GLEASON v. SAME. PEOPLE ex rel. HEANEY v. SAME.

(Supreme Court, Special Term, New York County. October, 1899.)

POLICE OFFICER—SALARY—INCREASE OF.

    Greater New York Charter, § 283, providing that the salary of police officers who become members of the municipal force through consolidation shall not thereby be decreased, as the same is lawfully fixed at the time the charter takes effect, and immediately prior thereto, does not assure to a police officer his prospective scale of compensation according to the grading of a force to which he belonged at the time he became a member of the municipal force, but only preserves his right to the pay which he was actually receiving when transferred to the municipal force.

Applications by the people, on the relation of Charles A. Turner, Thomas Gleason, and John P. Heaney, respectively, against Bernard J. York and others, police commissioners of New York City, for peremptory writs of mandamus. Applications denied.

Benjamin Yates and Leopold Leo, for relators.
Terence P. Farley, for respondents.

BISCHOFF, J. In each case the relator was appointed a patrolman upon the police force of the park department on January 15, 1897, and served as such until January 1, 1898, when, by operation of the charter (Laws 1897, c. 378), the park police force became a part of the police force of the city of New York, and the powers of the park commissioners with regard to the relator's employment ceased. If continued as a member of the park force, the relator's term of service of one year would have rendered him eligible to advancement on January 15, 1898, from the second or lowest to the first grade of that force, with a consequent increase of salary from $900 to $1,100 per annum (Consol. Act, § 690); but on January 1, 1898, when he became a member of the municipal force, under the charter, his salary necessarily had not been increased, and remained at $900. The charter (section 299) provided a scheme of grading of all members of the municipal force, containing seven grades for successive periods of service, with a scale of increase of salary, saving only (section 283) that the "salary or

compensation" of officers who became members of such force, through consolidation, should- not thereby be decreased, "as the same is lawfully fixed at the time this chapter [the charter] takes effect, and immediately prior thereto." As to the actual grading of officers transferred to the municipal police force upon consolidation, the charter provided (section 299) that such officers "shall belong, so far as pay or compensation is concerned, to the grade indicated by the pay or compensation which they are respectively receiving on January 1, 1898"; and, agreeably to this direction, the respondents classified the relator, on that date, as of the sixth grade under the charter (section 299), the salary attaching to that grade being $900. The relator's alleged grievance is that on the 15th of January, 1898, he should, upon application made, have been advanced to the fourth grade, eligibility to which he asserts through the fact that the salary due to that grade would have been received by him after that date, according to the scheme of grading originally applicable to the park police. The question is simply whether the charter, saving the "salary or compensation" of the relator from decrease, "as the same was lawfully fixed" on January 1, 1898 (section 283), operated to assure to him his prospective scale of compensation, or whether the meaning of the statute was to preserve his right to the pay which he was actually receiving, the future increase to follow the new scale provided; and the inquiry turns upon the sense in which the words "salary or compensation" are used in this statute. These words are by no means necessarily synonymous with "prospective scale of salary"; and it appears that the distinction is noted in the statute itself, in the principal section (section 299), which, while. merely saving to the relator and persons so circumstanced "the rights and privileges secured under the provisions of this act," distinctly preserves to the original members of the municipal force,· to the apparent exclusion of the relator, "their salaries or grading, present or prospective." Here, then, we have a recognition of the necessity for specific words to preserve any scale of salary differing from the scale set forth in the act; and, so far as the relator is concerned, these words have been omitted. The "rights and privileges" reserved to persons situated as the relator, upon the question of grading, are found in the provisions of the act whereby their term of service, before transfer to the municipal force, would be credited to them when determining their right to pensions (section 355), irrespective of their apparent grading, under the charter, as determined by their annual salary. The legislative intent that the officers thus transferred to the municipal force should be restricted to advancement upon the new scale is further evidenced by the fact that provision is made for their advancement to the "next grade" according to the day of the year of their original appointment (section 299); and the only grades contemplated by that section are those relating to the scale of salaries thereby fixed for members of the force, generally, as consolidated under the charter. It may also be said that there is no reason for assuming the intention of the legislature to have been as contended by the relator.

As a member of the park force, his increase of salary at the end of one year's service, although greater than the increase accorded for one year's service under the new scale, would have marked the limit of future increase, for the consolidation act provided no higher grades. Under the charter, however, successive years of service are to result in grades, three of which entail a salary much greater than was to be accorded for any period of service by the relator under the consolidation act; and in the attempt to obtain the full benefit under the latter statute, and then to enjoy the advantages flowing from the new grading under the charter, without performing the necessary period of service, the inconsistency of the relator's position is apparent.

Applications denied, with $25 costs of one application.